### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ameranth, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 22-1776 |
| v. ) | |
| ) | |
| Doordash, Inc., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

I.  Introduction

The dispute before the Court involves venue in a patent infringement case. Presently before the Court is a Motion to Dismiss the Amended Complaint for Lack of Venue, or alternatively, to Transfer or Dismiss for Failure to State a Claim (Docket No. 21), with brief in support (Docket No. 22) filed by the only named Defendant, Doordash, Inc. ("Doordash"). Plaintiff Ameranth, Inc. ("Ameranth") filed a brief in opposition to the motion (Docket No. 28) and Doordash filed a reply brief (Docket No. 32). The motion is ripe for decision.

II.  Factual and Procedural Background

The Court will briefly summarize the facts necessary to analyze venue, as set forth in the Amended Complaint (Docket No. 14). The Court will also consider the declarations submitted by the parties and the exhibits attached thereto. *Galderma Laboratiores, L.P. v. Medinter US, LLC*, No. CV 18-1892-CFC-CJB, 2019 WL 13114421, at *3 (D. Del. Oct. 25, 2019) ("[W]hen confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint.") (citation omitted).

A. Amended Complaint

Plaintiff recognizes that Doordash, Inc. is a Delaware corporation. Amended Complaint ¶ 2. Plaintiff agrees that, for venue purposes, Doordash resides only in Delaware, and therefore, to establish venue in this District, Ameranth has the burden to demonstrate that Doordash maintains a regular and established place of business in the Western District of Pennsylvania and that an act of infringement occurred here (Docket No. 28 at 3-4, 5 n.2).

Plaintiff avers that Doordash has "a brick-and-mortar store, called DashMart, located at 3232 Penn Avenue, Pittsburgh, Pennsylvania 15201, which has been open since 2021." Amended Complaint ¶ 2. Ameranth alleges that venue is proper based on the following: (1) Doordash "conducts substantial business in this forum, directly and/or through intermediaries"; (2) "Defendant's staff operating at and from their DashMart store in Pittsburgh use products and services that are accused of infringement here"; (3) the accused products and services are integrated with numerous restaurants and consumers in this District using Defendant's mobile app and supported by a Pittsburgh-based engineering team; (4) Defendant's July 2022 job posting for a DashMart site manager in Pittsburgh confirmed use of the products and services accused of infringement; (5) although Defendant cancelled the planned physical engineering office in the District (one month after Ameranth filed its initial complaint), Doordash continues to hire engineers in the District; (6) Defendant's engineering leader in Pittsburgh and other employees in this District are working on the products and services accused of infringement; and (7) Defendant employs hundreds of delivery "dashers" in the District, who use the allegedly infringing technology. Ameranth asserts venue pursuant to the second clause of 28 U.S.C. § 1400(b). Amended Complaint ¶¶ 5-12.

B. Doordash Declaration[1]

Doordash submitted a declaration by Kelsey Merrigan, Director of Tax Business Advisory and Planning at Doordash, in support of its venue challenge. Ameranth criticizes the Merrigan declaration as "created for this litigation," (Docket No. 28 at 6), but does not substantively contradict any of the representations made by Merrigan. Instead, Ameranth points to other statements made by Doordash (discussed below) to create alleged contradictions.

Merrigan avers that on December 9, 2022, the date the original complaint was filed, Doordash did not own or lease any real property, operate any distribution centers, research and development or manufacturing facilities or maintain any inventory in the Western District of Pennsylvania (Docket No. 23-1 ¶¶ 5-6). Doordash employs engineers in the Western District of Pennsylvania, all of whom work remotely. *Id.* ¶ 7. Doordash considered opening a physical engineering office in Pittsburgh, but decided against it. *Id.* Merrigan asserts that "dashers" are independent contractors. *Id.* ¶ 8.

Merrigan represents that "Doordash Essentials, LLC" ("DDE") is a wholly-owned indirect subsidiary of Doordash. *Id.* ¶ 9. DDE operates DashMart stores, including the Pittsburgh location identified in the Amended Complaint. *Id.* ¶ 10. DDE owns the leases for the DashMart locations, pays the rent and overhead, maintains business licenses, has direct contractual relationships with DashMart suppliers, purchases the goods, and manages the inventory. *Id.* ¶¶ 11-13. All DashMart employees are employed by DDE. *Id.* ¶ 14.

Merrigan declares that DDE and Doordash "operate as separate and distinct legal entities." *Id.* ¶ 15. They maintain separate bank accounts and business records, DDE pays its own operating expenses, except for employee benefits which are charged to DDE through

---

[1] The Merrigan Declaration was filed under seal, but the Court determined that this opinion need not be sealed.

intercompany transfers. *Id.* ¶¶ 16-17. Doordash does not control the day-to-day activities of DDE. *Id.* ¶ 18.

### C. Ameranth Declaration

In response to Doordash's motion, Ameranth submitted a declaration from Richard Weinblatt with numerous attached exhibits (Docket No. 29). The exhibits include, among other things, a photo of the Pittsburgh location, with a sign stating "DoorMart by Doordash" (Docket No. 29-1 at 2); Doordash's SEC Form 10-K; a posting from the Doordash Newsroom folder of its website by "Andrew Ladd, Director, New Verticals," stating "DashMart stores are owned, operated and curated by Doordash" (Docket No. 29-3 at 2); various job postings which refer to DashMart as a "department" of Doordash; various screenshots from DashMart's website and the Dashmark link from Doordash's website; and a California statement of information filed by "Doordash Essentials, LLC." (Docket No. 29-13).

The Court accepts as true, for purposes of this opinion, that the webpage for DashMart is under the Doordash page and the links talk about Doordash rather than DDE; the managing member of DDE, Tony Xu, is the CEO and founder of Doordash; Doordash and DDE have the same address; job postings for DashMart are posted at Doordash; the sign at the DashMart store in Pittsburgh says "DashMart by Doordash" and includes the Doordash trademark; and Doordash owns the trademark "Doordash Essentials." (Docket Nos. 28 at 17, 29).

### III. Legal Analysis

The relevant part of the patent venue statute, 28 U.S.C. § 1400(b), provides that venue is appropriate in a district where: (1) the defendant has committed acts of infringement; and (2)

4

"has a regular and established place of business."  Section 1400 "was a restrictive measure, limiting a prior, broader venue." *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017).  "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction." *Id.* (citation omitted).  Courts are instructed to "be mindful of this history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, e.g., personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *Id.*  The Court stressed that "the analysis must be closely tied to the language of the statute." *Id.* at 1362.  Time and again, the Court has "narrowly construed the requirements of venue in patent cases." *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1120 (Fed. Cir. 2021).  Plaintiff has the burden to establish venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

For this opinion, the Court will assume that Doordash committed acts of infringement in this District.  The crux of the dispute is whether Doordash maintains a "regular and established place of business" here and whether the activities of DDE can be imputed to Doordash. Ameranth did not name DDE as a defendant.

### A. General Principles of Law

The parties generally agree on the applicable legal test.  Because patent venue is unique to patent law, "Federal Circuit law, rather than regional circuit law, governs our analysis of what § 1400(b) requires." *In re Cray*, 871 F.3d at 1360.  There are three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not

satisfied, venue is improper under § 1400(b)." *Id.* at 1362.  The Court provided guidance about each requirement.

### 1. Physical

The statute requires a "place," i.e., a building or part of a building from which business is conducted and "cannot be read to refer merely to a virtual space or to electronic communications." *Id.*  While the "place" need not be a "fixed physical presence in the sense of a formal office or store," "there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.*

### 2. Regular and established

A business may be "regular," if it operates in a "steady[,] uniform[,] orderly[, and] methodical" manner. *Id.*  The place of business may be "established" if it is settled certainly, or fixed permanently. *Id.* at 1363.  For example, "a business that semiannually displayed its products at a trade show in the district had only a temporary presence." *Id.*  Sporadic or transient activity cannot create venue. *Id.*

### 3. Of the Defendant

There must be a place of the defendant, not solely a place of the defendant's employee. The defendant, not the employee, must establish or ratify the place of business. *Id.* "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place. One can also recognize that a small business might operate from a home; if that is a place of business of the defendant, that can be a place of business satisfying the requirement of the statute.  Another consideration might be whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that

6

place." *Id.* "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.* A defendant's representations that it has a place of business in the district are relevant. *Id.* "Potentially relevant inquiries include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id.* at 1363-64. "But the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* at 1364. The Court should consider "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues. Such a comparison might reveal that the alleged place of business is not really a place of business at all." *Id.*

### B. Imputation of Activities of Subsidiaries/Alter Ego

In *In re Cray*, the primary dispute was whether the employee's home was a place of business of the employer. In its response to the venue challenge in this case, Ameranth does not argue that the homes of the remote Doordash engineering employees (or the activities of the "dashers") support venue. Instead, Ameranth's only argument is that the brick-and-mortar DashMart store in Pittsburgh is Doordash's place of business (Docket No. 28 at 12-18). Because it is undisputed on this record that the DashMart Pittsburgh store is owned by DDE, the question becomes whether DDE's activities can be imputed to Doordash, such that the Pittsburgh location can be deemed to be a "regular and established place of business" of Doordash.

"Corporate separateness is an issue of regional-circuit law." *Celgene*, 17 F.4th at 1125. Therefore, the Third Circuit "alter ego" doctrine governs that issue. *Id.* The Federal Circuit

observed that under Third Circuit law: "this is an inquiry into whether the entities' separateness is little more than a legal fiction—a notoriously difficult burden." *Id.* at 1126 (citation and punctuation omitted). "Plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity." *Id*.

Under the Third Circuit test, "courts will disregard the corporate form to prevent fraud, illegality, or injustice, when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime, or when the parent so dominated the subsidiary that it had no separate existence." *Id.* (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 & n.2 (3d Cir. 2001)) (punctuation omitted).  Among other factors, the Third Circuit looks at "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the [subsidiary] corporation, siphoning of funds from the [subsidiary] corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Id.* at 1125-26.

The Federal Circuit addressed a similar venue challenge in *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1286 (Fed. Cir. 2021).  That case involved a parent and several subsidiaries, all of which maintained their own corporate, partnership, or limited liability company status, identity, and structure.  One subsidiary ("Stores") operated physical stores in the district and was clearly subject to venue.  The question was whether the activities of the Stores subsidiary could be attributed to the parent and non-stores subsidiaries ("Non-Stores Defendants").

The plaintiff argued: (1) the Stores employees were agents of the Non-Store Defendants; or (2) the Non-Store Defendants ratified Stores locations as their places of business.  The Court

rejected both arguments. Stores employees were not agents of the parent corporation because it did not have the right to direct their activities. The Court observed that public filings speaking in broad terms about "we" did not demonstrate the parent's control, because "we" could include the individual subsidiary brands. *Id.* at 1288.

With respect to imputing Stores' activities to the Non-Stores defendants, the Court articulated a threshold test:

> A threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness. If corporate separateness has not been maintained, the place of business of one corporation may be imputed to the other for venue purposes. But **where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes.** *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334–35, 45 S.Ct. 250, 69 L.Ed. 634 (1925); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3823 & nn.25–26 (4th ed.).

*Id.* at 1289 (emphasis added).

In *Andra,* the plaintiff did not argue that the Defendants failed to maintain corporate separateness, but instead argued for ratification based on the criteria outlined in *In re Cray*.[2] The Court rejected the argument that defendants maintained a unified business model and commented that "the fact that the entities work together in some aspects, [ ] is insufficient to show ratification." *Id.* at 1290. The Court explained that the Non-Store Defendants did not own or lease the stores, did not conduct operations at the Stores and carried out different business functions than Stores. *Id.* The companies' shared use of "Victoria's Secret" in their name did not detract from the separateness of their businesses. *Id.* Therefore, the Non-Store Defendants did not maintain a regular and established place of business in the District. *Id.* The Court affirmed the dismissal for improper venue.

---

[2] In *Celgene*, the Court observed that "a parent corporation might specifically ratify a subsidiary's place of business, even if the two do maintain corporate separateness." 17 F.4th at 1127 (citing *Andra*). .

In *Celgene*, the Court held that "a subsidiary's presence isn't imputed to a parent for venue unless the parties 'disregarded the corporate form.'" 17 F.4th at 1125. The Court recognized that venue may be imputed under an alter-ego or veil-piercing theory, but "where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Id.* (citing *Andra*). The Court explained: "courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent." *Id.* at 1126 (citation omitted).

Ameranth did not address the decisions in *Andra* or *Celgene*. Ameranth did not cite any decisions upholding patent venue under similar facts.

    C.  Application to this case

In this case, based on the record before the Court, Doordash and DDE are separate corporate entities and the Pittsburgh location is owned and operated by DDE. There is no evidence that formalities of corporate separateness were not observed. Thus, Ameranth did not satisfy the threshold *Andra* test.

There is also no evidence in the record with respect to the vast majority of the alter ego factors identified in *Celgene* (i.e., gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of DDE, siphoning of funds from DDE, nonfunctioning of officers and directors, absence of corporate records, etc.). Ameranth "has not met its burden to show a lack of corporate separateness such that [DoorMart's] place of business should be imputed to [Doordash]—nor provided any other reason to disregard the corporate distinction between them." *See Celgene*, 17 F.4th at 1126-27 ("At most, the evidence shows

10

collaboration not commonality."). In *Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*, No. CV2110403SRCJSA, 2022 WL 683084, at *5 (D.N.J. Mar. 8, 2022), the Court explained that facts showing coordination between related corporate entities (including use of an online product catalogue that does not differentiate between subsidiaries; use of one hiring page, one newsroom for press releases, one customer-service email address, one Twitter page, one YouTube channel, and one LinkedIn page; reporting of consolidated financial and operation status; use of logos across its products and branding; use of a common email domain; and coordination of regulatory communications with the FDA) did not support venue.

There is no evidence that Doordash exercises control over the day-to-day operations of the Pittsburgh DashMart location. There is no evidence that any of the Doordash engineering employees work at the DashMart location. The sign on the DashMart store does not establish that Doordash engaged in regular and established business from that location. The brief references in job postings to DashMart being a "department" do not establish a failure to observe corporate separateness formalities or overcome the lack of evidence for most of the alter ego factors. In short, the Court concludes that Doordash, the only named Defendant, does not have a regular and established place of business in this District. Patent venue over Doordash is not proper here.

### C. Venue Discovery

In *Loyal-T Sys. LLC v. Am. Express Co.*, No. CV 23-2625, 2024 WL 4381835 (D.N.J. Oct. 3, 2024), the Court recently summarized the standard for considering whether to permit venue discovery:

> The Supreme Court has stated that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer*

11

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). In general, courts permit venue discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *see also Galderma Laboratiores, L.P. v. Medinter US, LLC*, No. 18-1892, 2019 WL 13114421, at *3 (D. Del. Oct. 25, 2019). Nonetheless, to show that discovery is warranted, a party must, at a minimum, state a non-frivolous basis for venue and do so with "reasonable particularity." *Id.*; *see also Step Two, S.A.*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). That is, a court should not just permit venue discovery as a matter of course; before allowing the discovery to proceed, the court must be satisfied that there is some indication that venue in the forum is appropriate as to the defendant. *Galderma Laboratiores, L.P.*, 2019 WL 13114421, at *3. A plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of [venue] discovery." *Id.* (internal quotation marks and citations omitted); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

*Id.* at *9.[3]

The decision in *Bausch*, 2022 WL 683084 at *3, is procedurally similar and instructive. The parties in *Bausch* submitted declarations and documentary evidence in support of their respective positions on an alter ego theory to support venue, which the Court considered. The Court stated that it would resolve all factual conflicts in the plaintiff's favor and that the plaintiff's burden was only to demonstrate a prima facie showing that venue is appropriate. *Id.* The Court in *Bausch*, despite similar allegations about shared logos, catalogs, hiring, social media, consolidated financials, etc., *see supra* at 11, concluded that the plaintiff failed to support any basis to support an alter ego theory and denied venue discovery.

The same result is appropriate here. Ameranth did not seek leave to amend its complaint, but did submit a lengthy declaration with numerous exhibits in support of venue on an alter ego theory (Docket No. 29). Those exhibits show evidence of collaboration, but not commonality.

---

[3] The court noted that in the absence of guidance from the Federal Circuit, it applied Third Circuit precedent for venue discovery. *Id.* at n. 6 (citations omitted). In this case, there is no material difference in the standard – venue discovery is not warranted.

Based on the legal principles discussed above, there is no reasonable basis to believe that discovery would disclose facts to invoke the alter ego doctrine to support the exercise of patent venue in this district. Accordingly, venue discovery will not be authorized.

### D.  Transfer to another District

Doordash seeks, as an alternative to dismissal, the transfer of this case to the United States District Court for the District of Delaware (Docket No. 21). Venue is proper in Delaware because Doordash is incorporated in that state. Ameranth also requests transfer of this case to Delaware if the Court decides venue does not lie here (Docket No. 28 at 12). This Court concludes that transfer to the United States District Court for the District of Delaware, rather than dismissal, is appropriate.

The Court is acutely aware that this is a 2022 case. Transfer to a district in which venue is indisputably proper is more consistent with Federal Rule of Civil Procedure 1 than further litigation about whether venue is proper here.

IV. Conclusion

For the reasons set forth above, Doordash's motion to dismiss or transfer this case for lack of venue (Docket No. 21) will be granted in part. This District is not an appropriate venue and the clerk will be directed to transfer this case forthwith to the United States District Court for the District of Delaware.

An appropriate order will be entered.

Dated: February 13, 2025

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record