UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

No. 1:25-cv-00180

**Ameranth, Inc.,**
*Plaintiff,*

v.

**DoorDash, Inc.,**
*Defendant.*

# OPINION AND ORDER

Plaintiff brought this action alleging that defendant infringes U.S. Patent No. 11,276,130 ('130 Patent). Doc. 14 at 40. Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 54. Defendant argues that the '130 Patent claims patent-ineligible subject matter under 35 U.S.C. § 101. Doc. 55 at 7. The court agrees.

## I. Procedural arguments

Plaintiff argues that the court should deny defendant's motion for "sandbagging" by asserting arguments for the first time in the reply brief and not applying plaintiff's proposed claim construction at the pleading stage. Doc. 56 at 8–15. Those arguments lack merit.

Plaintiff argues that defendant ignored the plaintiff's factual allegations and proposed claim constructions, failed to properly apply those constructions, and disputed the constructions which waived defendant's arguments applying plaintiff's constructions in the reply brief. Doc. 56 at 8–11. Defendant's motion argued that plaintiff's proposed constructions should not be accepted because the constructions contradict the '130 Patent's claims and specification. Doc. 55 at 17–21. "[A]t the motion to dismiss stage, factual allegations in the complaint which contradict the specification or the claims need not be credited as true under the Rule 12(b)(6) analysis." *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 343 (D. Del. 2019) (citing *Aatrix Software, Inc. v. Green Shades*

- 1 -

*Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). Thus, these arguments were proper.

Moreover, defendant adds that "should the [c]ourt adopt [plaintiff's] proposed constructions for purposes of this motion," the court should still dismiss because the claimed components are abstract and do not add an inventive concept. Doc. 55 at 19. Defendant argued for a construction based on the intrinsic record and alternatively argued that the claims are still ineligible under plaintiff's proposed constructions. Defendant was free to respond to plaintiff's counter-arguments on both points in its reply brief.

Further, defendant—and this court—are not bound to apply plaintiff's proposed construction. *Aatrix*, 882 F.3d at 1125. Plaintiff misstates the law when asserting otherwise. *Compare* Doc. 56 at 11 ("Applying [plaintiff's] proposed constructions . . . as this court must do . . . .") *with Aatrix*, 882 F.3d at 1125 ("we have held that either the court must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." (citation omitted)).

## II. U.S. Patent No. 11,276,130

Plaintiff is the assignee and owner of the '130 Patent. Doc. 14 at 6. The '130 Patent "relates to an information management and synchronous communications system and method for generation of computerized menus for restaurants and other applications with specialized display and synchronous communications requirements." '130 Patent col. 1 ll. 17–21. The "principal object of the ['130 Patent] is to provide an improved information management and synchronous communications system and method which facilitates user-friendly and efficient generation of computerized menus for restaurants and other applications." *Id.* col. 2 ll. 61–65. In other words, the '130 Patent discloses an information management and synchronous communications system—a system that allows for real-time data exchange between two or more

parties simultaneously—for use in the food and hospitality services industry.

The '130 patent teaches computerizing the traditional pen-and-paper ordering common to "restaurant/hotel/casino food/drink" services. *Id.* col. 3 ll. 43–61. Computerization provides a more efficient mechanism for ordering than the traditional method of a customer verbally ordering food and the hospitality service employee manually writing it down on paper. *Id.* col. 1 ll. 31–39, col. 3 ll. 43–51. This advancement may be accomplished using "typical hardware elements in the form of a computer workstation, operating system and application software elements" that configure the hardware—including a central processing unit, microprocessor, RAM, ROM, hard drive storage, modem, display screen, keyboard, mouse, and removable storage devices (e.g., floppy drive or a CD ROM drive)—to achieve computerized ordering. *Id.* col.6 l. 57–col. 7 l. 9. In summary, the '130 Patent teaches an efficient hospitality ordering system using computer elements known in the art.

There are three claims in the '130 Patent, one independent and two dependent, that cover:

> 1. An intelligent web server computer with multi-modes of contact, multi-communications protocols, multi-user and parallel operational capabilities for use in completing remotely initiated hospitality food/drink delivery or pick up ordering tasks comprising;
>
>> at least one said web server computer with web server software;
>>
>> at least one hospitality food/drink ordering software application for delivery or pick up orders integrated with the at least one said web server computer;
>>
>> an advanced master database comprising data and parameters of the at least one hospitality food/drink ordering software application integrated with the at least one said web server computer and with a usable menu file structure dictated prior to task

execution and is accessible via its own database API and with one or more predefined formats stored within it and which intelligently learns, updates and stores multiple communication modes of contact and related operational parameters for hospitality entities and for remote hospitality users along with their prior attributes or preferences, if any and then intelligently applies them;

Middleware/Framework Communications Control Software (MFCCS) which enables via its centralized system layer architecture the at least one said web server computer to communicate with two or more remote wireless handheld computers and for multiple modes of contact, multiple communications protocol functionality, integrated with the master database and with the at least one hospitality food/drink ordering software application;

at least one external software API, which enables the full integration of the at least one hospitality food/drink ordering software application and the MFCCS with one or more non hospitality applications via the internet;

the external software API integrating with and leveraging the advanced master database to enable the importing of food/drink menus including required and non-required modifiers which are then automatically reflected throughout the master menu tree file structure, improving efficiency while eliminating the necessity of continually querying or checking every tree branch in the master menu tree file structure when responding to remote user requested tasks and/or other inputs;

wherein the at least one said web server computer is integrated with the MFCCS, the hospitality food/drink ordering software and is programmed

> with instructions enabled to intelligently choose and apply multiple and different modes of contact and/or different communications protocols, if applicable with the said hospitality entities and/or said remote users associated with the user requested hospitality food/drink delivery or pick up ordering application tasks and is enabled to support the completion of those tasks.
>
> 2. The intelligent web server of claim 1 further enabled to assign and apply sub-modifiers to the required or non required modifiers.
>
> 3. The intelligent web server of claim 1, further enabled to include meal preparation times in the food/drink ordering.

*Id.* col. 21 l.37–col. 22 l.49.

Plaintiff argues that these claims are "back-end directed" to improvements of "the operation and efficiency of web server computers and networks." Doc. 56 at 6. On plaintiff's view, the claims are not only directed to virtual food or drink ordering, but also disclose an improvement to "distributed computing systems." *Id.* at 6–8.

### III. Legal standards

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Federal Circuit reviews procedural issues, including Rule 12(b)(6) motions, according to regional circuit law. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018). In the Third Circuit, courts conduct a two-part analysis for Rule 12(b)(6) motions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, "accept[ing] all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id.* at 210–11. Second, the court determines whether the alleged facts sufficiently show a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Assessing plausibility, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Federal Circuit has "repeatedly recognized[] it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289–90 (Fed. Cir. 2024) (cleaned up). Section 101 eligibility is properly decided on a Rule 12(b)(6) motion "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (quoting *Aatrix*, 882 F.3d at 1125).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent-eligible subject matter is defined in § 101 as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has excepted "[l]aws of nature, natural phenomena, and abstract ideas" from patentability under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up).

> Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them

into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id.* at 217 (cleaned up).

*Alice* established a two-step framework for determining patent-eligibility under § 101. At step one, the court determines whether a claim is "directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If so, the court determines at step two whether the claim "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (cleaned up).

## IV. Analysis

As a matter of law, the '130 Patent is directed to a patent-ineligible abstract idea, and the claims do not otherwise provide an inventive step.

### A. *Alice* step one

To determine whether claims are "directed to patent-ineligible subject matter," such as an abstract idea, the court should "look to the character of the claims as a whole," including the patent's specification. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Enfish v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). Under *Alice* step one, the inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Id.* In other words, "whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1336).

The '130 Patent is directed to the abstract idea of ordering food or drinks for delivery or take-out from a menu capable of multiple modes of communication. *See* '130 Patent col. 21 ll. 38–42 (claiming "An intelligent web server computer with multi-modes of contact, multi-communications protocols, multi-user and parallel operational capabilities for use in completing remotely initiated hospitality food/drink delivery or pick up ordering tasks"). To be sure, the patent teaches that the "principal object of the present invention is to provide an improved information management and synchronous communications system and method which facilitates user-friendly and efficient generation of computerized menus for restaurants and other applications". *Id.* col. 2 ll. 61–65. The claim elements provide nothing further than the desired "result or effect" through "generic processes and machinery." *McRo*, 837 F.3d at 1314.

For example, the "intelligent web server" of Claim 1 comprises "an advanced master database . . . which intelligently learns, updates and stores multiple communication modes of contact and related operational parameters for hospitality entities and for remote hospitality users along with their prior attributes or preferences, if any and then intelligently applies them." '130 Patent col. 21 l. 38, col. 21 l. 48–col. 22 l. 9; *see also id.* col. 22 ll. 34–39 ("wherein the at least one said web server computer . . . is programmed with instructions enabled to intelligently choose and apply multiple and different modes of contact and/or different communications protocols"). The term "intelligent" is not mentioned once in the specification outside of Claim 1.

According to plaintiff, "intelligence" allegedly means "the ability of a program to monitor its environment and initiate appropriate actions to achieve a desired state." Doc. 56 at 7 n.5. Even accepting this construction, "intelligent" is merely an aspirational goal of the invention, not a disclosed improvement. In fact, the specification teaches that the disclosed invention can be achieved with "typical hardware elements," on a "typical workstation," with a "typical file server platform," and/or "on a

typical wireless device." '130 Patent col. 6 l. 58, col. 6 l. 61, col. 7 ll. 5–6, col. 13 l. 17. "In other words, the specification does not support a finding that the claims are directed to a technological improvement" in computer functionality. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023). "This is a quintessential 'do it on a computer' patent: it acknowledges that" ordering food or drinks is traditionally done with pen-and-paper "and it simply proposes doing so with a computer." *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Plaintiff rebuts that the '130 Patent is directed to an abstract idea by arguing that claim 1 recites computer technology improvements, including: "the specific type of master menu file structure," "automatic reflecting," "parallel operations," and "programming instructions." Doc. 56 at 17–18.

The alleged improvement to the specific type of master menu file structure does not disclose an improvement to computer technology. Claim 1 teaches that this file structure "improv[es] efficiency while eliminating the necessity of continually querying or checking every tree branch in the master menu tree file structure when responding to remote user requested tasks and/or other inputs." '130 Patent col. 22 ll. 29–33; *see also id.* col. 20 ll. 37–41. Plaintiff alleges that this teaching "aligns with Enfish's patent-eligible improvements to . . . data structures." Doc. 56 at 17 (citing *Enfish*, 822 F.3d at 1339).

Plaintiff misses the key distinction in the caselaw. *Enfish* held that "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d at 1335–36. There, the specification "improve[d] upon prior art information search and retrieval systems by employing a flexible, self-referential table to store data." *Id.* at 1337 (quoting U.S. Patent No. 6,151,604 col. 2 ll. 44–46). Here, the '130 Patent teaches an "inventive menu generation approach [which] provides

a solution for the pervasive connectivity and computerization needs of the restaurant and related markets," i.e., using "typical" computer systems to transform the pen-and-paper ordering system to a "computerized" system. '130 Patent col. 12 ll. 15–17. The disclosed master menu file structure merely computerizes a pen-and-paper ordering system; it does not teach an improvement to computer technology.

Plaintiff's other alleged improvements fare no better. "Automatic reflecting" is merely an automation of the writing down of an order. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology"). The "parallel operations" disclosed do not describe how to improve simultaneous computer operations, but merely describe how their functionality will "allow the user to select from presented possibilities a desired choice." '130 Patent col. 16 ll. 5–24; *cf. SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) (finding no inventive step under *Alice* step 2 when noting "neither the claims nor the specification call for any parallel processing architectures different from those available in existing systems"). The additional claim element that "said web server computer . . . is programmed with instructions enabled to intelligently choose and apply multiple and different modes of contact and/or different communications protocols" does not claim improved computer technology—especially considering that the disclosure teaches that "[t]he discrete programming steps are commonly known and thus programming details are not necessary to a full description of the invention." '130 Patent col. 22 ll. 34–39, col. 13 ll. 9–12.

Considering the '130 Patent teaches a virtual ordering system using typical computer elements with known programming steps and automation of manual processes, the '130 Patent is directed to the abstract idea of ordering food or drinks for delivery or takeout from a menu capable of multiple modes of communication.

### B. *Alice* step two

At *Alice* step two, the court considers whether the claims contain an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). For example, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, "methods for determining metabolite levels were already 'well known in the art,' and the process at issue amounted to 'nothing significantly more than an instruction to doctors to apply the applicable laws when treating their patients.'" *Id.* at 221–22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). So too in *Alice*, where "the claims at issue amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (quotation marks omitted).

Plaintiff has not successfully pointed to any inventive concept in the claims or the specification. Plaintiff relies heavily on the court's mandate to take all well-pleaded factual allegations as true and its expert declaration that alleges the '130 Patent provides an inventive concept. Doc. 56 at 21–24. However, "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute" as to inventiveness. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring in the denial of the petition for rehearing en banc). As discussed above, the structures disclosed in claim 1 are described in the specification as "typical," "simple," and "known" not once, but throughout the specification. '130 Patent col. 6 ll. 41–46, col. 6 l. 57–col. 7 l. 12, col. 13 ll. 9–21, col. 21 ll. 8–19.

Plaintiff adds that the Middleware/Framework Communications Control Software (MFCCS) improves the claimed web server computer and "overcomes the technical challenge of simultaneously achieving consistency, availability, and partition tolerance." Doc. 56 at 24. The MFCCS enables the web server computer of claim 1 "via its centralized system layer architecture . . . to communicate with two or more remote wireless handheld computers and for multiple modes of contact, multiple communications protocol functionality, integrated with the master database and with the . . . hospitality food/drink ordering software application." '130 Patent col. 22 ll. 11–19; *see also id.* Fig. 10.

However, the specification teaches that this is further pen-and-paper technology done on a computer. The synchronization capability "works to keep all wireless handheld devices and linked web sites in synch with the backoffice server application so that the different components are in equilibrium at any given time and overall consistency is achieved." *Id.* col. 5 ll. 27–40. In simpler terms, synchronization ensures that the inventory/menu displayed on a user's smartphone or laptop is the same inventory/menu stored at the retailer/restaurants home server. By synchronous communication, each connected device is seeing the same data or selection in real time on the given webpage. *See id.*

This is no more than computerizing the traditional pen-and-paper process of reserving orders or appointments. *See id.* col. 18 ll. 15–18 ("For example, the user might be prevented from specifying a desired appointment and/or reservation date and/or time known by the computer to correspond to inventory that was not available."). The specification teaches that synchronization through MFCCS uses known computer technology (e.g., instant messaging, text messaging, text to voice, voice to text, touch tone recognition) to organize reservations and hold reservations from being selected by other users. *See id.* fig. 10, col. 14 l. 55–col. 16 l. 4, col. 16 l. 61–col. 17 l. 34, col. 18 l. 19–col. 19 l. 10. These disclosures do not teach enhanced computer technology. "Indeed, the [computerized reservations] at issue here are unpatentable

because they 'could still be made using a pencil and paper' with a simple notification device even in real time as [reservations] were being made." *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368–69 (Fed. Cir. 2015) (cleaned up) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (quoting *Parker v. Flook*, 437 U.S. 584, 586 (1978))). The specification instead teaches that "paper-based ordering, waitlist and reservations management have persisted in the face of widespread computerization" and "solv[es] the problem of converting paper-based menus . . . to small PDA-sized displays and Web pages" through "the present invention[,] . . . a software tool for building a menu, optimizing the process of how the menu can be downloaded to either a handheld device or Web page, and making manual or automatic modifications to the menu after initial creation." '130 Patent col. 2 ll. 45–48, col. 3 ll. 44–51.

Plaintiff's reliance on *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) falls short. Even the *Cellspin* court did "not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss." 927 F.3d at 1317. In *Aatrix*, the Federal Circuit reversed dismissal at the 12(b)(6) stage on § 101 patent eligibility because "[t]he district court supplied no reasoning or evidence for its finding that the" claims disclosed routine components and functionalities of a computer. 882 F.3d at 1129. Here, the specification describes the claimed elements as "typical," "simple," and "known" throughout the specification. '130 Patent col. 6 ll. 41–46, col. 6 l. 57–col. 7 l. 12, col. 13 ll. 9–21, col. 21 ll. 8–19. The '130 Patent's intrinsic record provides sufficient reasoning and evidence to hold the claims patent-ineligible under 35 U.S.C. § 101; the court cannot ignore this evidence in favor of plaintiff's creative patent-eligibility allegations. *See Aatrix*, 882 F.3d at 1125 ("plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)" (cleaned up)).

While plaintiff does not explicitly argue that dependent claims 2 or 3 provide anything to alter the analysis under *Alice* step 1 or 2, these additional web server limitations of "enabled to assign and apply sub-modifiers" and "enabled to include meal preparation times in the food/drink ordering" are directed to the same abstract idea and provide no inventive step.

## V. Leave to amend

Plaintiff has already amended its complaint once. Further, five patents related to the '130 Patent have been held unpatentable under § 101 by the Federal Circuit. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016) ("Claims 1–11 of [U.S. Patent No. 6,384,850], claims 1–10 of [U.S. Patent No. 6,871,325], and claims 1–16 of [U.S. Patent No. 6,982,733] are all unpatentable under § 101"); *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 788 (Fed. Cir. 2019) ("Accordingly, we agree with the district court's determination that claims 1, 6–9, 11, and 13–18 [of U.S. Patent No. 8,146,077] are patent ineligible."); *Ameranth, Inc. v. Olo Inc.*, No. 1:20-cv-00518, 2020 WL 6043929, at *7–10 (D. Del. Oct. 13, 2020) (Stark, J.) (joint opinion for *Ameranth, Inc. v. Olo Inc.* and two unrelated cases), *aff'd without opinion*, *Ameranth, Inc. v. Olo Inc.*, No. 21-01211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021) (holding claims 1, 3, 6, 9–11 of U.S. Patent No. 9,747,651 patent ineligible under § 101). One of which, with the exact same specification as the '130 Patent, was held invalid by this court. *Olo*, 2020 WL 6043929, at *7–10. As such, any further amendments to the complaint would be futile.

## VI. Conclusion

Thus, defendant's motion to dismiss under Rule 12(b)(6) is granted. Plaintiff's case is dismissed with prejudice. Any pending motions are denied as moot.

*So ordered by the court on November 24, 2025.*

J. CAMPBELL BARKER
United States District Judge